UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

NANCY ELLEN VINTON-ZIMMERMAN
AND IAN PAUL ZIMMERMAN                                                         PLAINTIFFS

V.                                                    CIVIL ACTION NO. 3:20-CV-171-DPJ-FKB

MIDFIRST BANK                                                                    DEFENDANT

ORDER

Plaintiffs Nancy Ellen Vinton-Zimmerman and Ian Paul Zimmerman filed this lawsuit against their former lender, MidFirst Bank, when it imposed a prepayment penalty after the Zimmermans refinanced through a competing lender. MidFirst says the Zimmermans contractually waived their right to a jury trial and now asks the Court to strike their jury demand. Having considered the parties' submissions and relevant authorities, the Court finds MidFirst's motion to strike [15] should be granted.

I.   Facts and Procedural History

On April 26, 2006, the Zimmermans executed an Amended and Restated Promissory Note (2006 Amended Note) with MidFirst for commercial property in Madison, Mississippi. That same day, Nancy and Ian also signed separate Limited Guaranty Agreements. All three documents contained identical waivers of the Zimmermans' right to a jury trial. *See* 2006 Am. Note [15-1] at 10; Ian Zimmerman Guaranty [33-1] at 17–18; Nancy Vinton-Zimmerman Guaranty [33-2] at 17–18.

In 2013, the Zimmermans began exploring ways to refinance their debt. To that end, they met with Carole Lein, an officer at MidFirst, who, according to them, never mentioned the potential for a prepayment penalty if they refinanced with MidFirst or a different lender. Compl. [1] at 3. In fact, they say that "in response to a question about whether there would be any

prepayment penalty in the event of a refinancing, Lein stated 'that was not an issue,' meaning that no prepayment penalty would be charged in the event the Zimmermans refinanced." *Id.*

Consistent with this understanding, Lein generated a refinancing offer that did not include a prepayment penalty. *Id.* at 4; *see* Lein E-mail (Ex. 1) [1-1]. The Zimmermans considered the proposal but ultimately opted to refinance with BankPlus. They requested the loan payoff information in anticipation of closing, which Lein provided on April 14, 2014. Compl. [1] at 4–5. Again, the payoff letter did not mention a prepayment penalty. *Id.* at 5; *see* Payoff Letter (Ex. 3) [1-3]. On April 24, 2014, the Zimmermans refinanced the loan with BankPlus. Compl. [1] at 5. As discussed below, the Zimmermans now say these events in April 2014 constitute an express or implied-in-fact agreement that included no jury-trial waiver.

On May 6, 2014, Lein reported that the payoff amount quoted did not cover the debt to MidFirst; an additional $397,768.03 prepayment penalty was due. *Id.* at 6. Lein explained that the "prepayment penalty was 'missed on their payoff statement'" and refused to cancel the 2006 Deed of Trust. *Id.* According to the Zimmermans, if they had known about the prepayment penalty, they would not have gone forward with the refinance because the penalty "exceeded the economic benefit . . . of the refinancing." *Id.* at 7. In addition, the Zimmermans allege that on July 16, 2015, MidFirst recorded a Notice of Extension of Maturity Date "purporting to extend the maturity date of the Deed of Trust to May 1, 2016, . . . in an attempt to cure the problem that the Deed of Trust does not contain a maturity date." *Id.* at 8.

The Zimmermans filed this suit seeking a declaration that the loan was paid in full and the 2006 Deed of Trust is cancelled. *Id.* at 8–11. They also assert claims for breach of contract, negligent or intentional misrepresentation, slander of title, and breach of the duty of good faith and fair dealing. *Id.* at 11–18. The case is before the Court on MidFirst's motion to strike the

Zimmermans' request for a jury trial, which it bases on the jury-trial waiver in the 2006 Amended Note and limited guaranties. After protracted briefing—to include a surreply and a response to the surreply—the motion is fully briefed; the Court has both personal and subject-matter jurisdiction.

II.   Analysis

MidFirst says the Zimmermans' request for a jury trial should be struck because they waived that right in the 2006 Amended Note and associated limited guaranties. The Zimmermans oppose the motion in three primary ways, asserting: (1) their claims are not based on the 2006 Amended Note and related limited guaranties but on "a separate express contract or implied-in-fact contract" made in April 2014 regarding the amount needed to pay off the debt; (2) Mid-First's pre-discovery motion to strike their jury demand is premature; and (3) the waiver is unilateral and therefore unenforceable. Pls.' Mem. [19] at 2–3. The Court will address each issue in turn.

A.   The 2006 Jury-Trial Waivers

The Zimmermans claim that the three jury-trial waivers they signed in 2006 do not apply to this civil action because their claims relate to an express, or implied-in-fact, contract with MidFirst entered in April 2014 when they explored refinancing. Pls.' Mem. [19] at 11. According to them, "the terms of that contract did not include a waiver of a jury trial." *Id.* This argument is not compelling.

The Zimmermans signed three identically worded jury-trial waivers that included broad language covering a range of disputes related to the loan. Specifically, the Zimmermans agreed to waive their jury-trial rights "**WITH RESPECT TO ANY LITIGATION BASED UPON THE NOTE, THIS INSTRUMENT, OR ARISING OUT OF, UNDER, OR IN**

3

**CONNECTION WITH ANY OF THE OTHER LOAN DOCUMENTS, OR RESPECTING ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY**." 2006 Am. Note [15-1] at 10 (emphasis in original); *see also* Ian Zimmerman Guaranty [33-1] at 17–18; Nancy Vinton-Zimmerman Guaranty [33-2] at 17–18.

As MidFirst points out, the Zimmermans' claims "do not exist but for the lender-borrower relationship created by the Loan Documents, including the Amended Note[.]" Def.'s Rebuttal [24] at 2. So, while their claims arise from the communications they received during refinancing, the Zimmermans were refinancing the debt memorialized in the 2006 Amended Note. *See Regions Com. Equip. Fin., LLC v. Performance Aviation, LLC*, No. 2:16-CV-110-KS-JCG, 2017 WL 354275, at *3 (S.D. Miss. Jan. 24, 2017) (rejecting argument that replevin claim falls outside loan documents' jury waivers where the waiver applied to "ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION . . . IN ANY WAY CONNECTED WITH OR RELATED TO" the loan documents); *Donnelly v. Branch Banking & Tr. Co.*, 91 F. Supp. 3d 683, 701 (D. Md. 2015) (finding jury waiver in loan agreement applied and rejecting argument that negotiations over refinancing are "separate and apart from the underlying loan").

Finally, the Zimmermans cannot evade their contractual duties by arguing that the communications in April 2014 reflect a new contract that supersedes the 2006 Amended Note and two limited guaranty agreements. Even if the events in April 2014 constitute a new oral or written agreement, the jury-trial waivers covered that contingency, agreeing to waive a jury for any litigation "**ARRISING OUT OF, UNDER, OR IN CONNECTION WITH ANY OTHER LOAN DOCUMENTS**" and "**ANY COURSE OF CONDUCT, COURSE OF DEALING,**

4

**STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY.**"

2006 Am. Note [15-1] at 10 (emphasis in original).

  B. Validity of Waivers

Turning to the waivers contained in the 2006 Amended Note and limited guaranty agreements, a litigant may waive his or her right to a jury in civil cases, "but the waiver must be made in a knowing, voluntary, and intelligent manner.'" *Branch Banking & Tr. Co. v. Price*, No. 2:11-CV-23-KS-MTP, 2011 WL 5403403 at *1 (S.D. Miss. Nov. 8, 2011).  The parties agree that the Court should consider five factors when determining whether the agreement was knowingly and voluntarily made.  *See* Def.'s Mem. [16] at 4; Pls.' Mem. [19] at 16.  Those factors are:

> (1) whether there was a gross disparity in bargaining power between the parties; (2) the business or professional experience of the party opposing the waiver; (3) whether the opposing party had an opportunity to negotiate the contract terms; (4) whether the clause containing the waiver was inconspicuous; and (5) whether the opposing party was represented by counsel.

*Branch Banking & Tr. Co.*, 2011 WL 5403403 at *1.[1]

For purposes of this motion, the Court will assume MidFirst bears the burden of proof. *See 736 Bldg. Owner, LLC v. Regions Bank*, No. 3:14-CV-222-KS-MTP, 2016 WL 3124650, at *2 (S.D. Miss. June 1, 2016) (noting open question, collecting cases, and assuming, without

---

[1] The Court considered whether Mississippi law should apply to this motion, but the parties' reliance on federal law appears to be correct.  *See Jeffrey J. Glaser, MSD, P.A. v. Compass Bank, N.A.*, No. 4:09-CV-569, 2010 WL 11553124, at *1 (E.D. Tex. July 14, 2010) (rejecting argument that court should apply Texas choice-of-law provision to motion to strike jury demand based on jury-trial waiver).

deciding, that defendant carried burden of proof); *see also Charles v. Nasser Heavy Equip., Inc.*, No. 1:06-CV-556-LG-JMR, 2008 WL 3992648, at *2 (S.D. Miss. Aug. 22, 2008) (same).[2]

As explained below, MidFirst analyzes each factor listed above, but the Zimmermans largely left the assertions unrebutted, insisting merely that MidFirst failed to meet its burden and that the motion is premature because no discovery has occurred. Pls.' Mem. [19] at 17. Contrary to their position, MidFirst supports its motion with the loan documents, the Zimmermans' own pleadings, and some additional evidence the Zimmermans never refute. Moreover, MidFirst's factual assertions are within the Zimmermans' personal knowledge, so they could have easily addressed those points with affidavits. To the extent they think discovery is somehow necessary, the Zimmermans never explain the specific discovery they need or how it would help the Court weigh the five factors. *Cf.* Fed. R. Civ. P. 56(d). The Court therefore turns to those factors.

      1.     Disparity in Bargaining Power

"To invalidate a waiver provision, [ ] the bargaining differential must be the kind of 'extreme bargaining disadvantage' or 'gross disparity in bargaining position' that occurs only in certain exceptional circumstances." *Westside-Marrero Jeep Eagle v. Chrysler Corp.*, 56 F. Supp. 2d 694, 709 (E.D. La. 1999); *see 736 Bldg. Owner, LLC*, 2016 WL 3124650, at *2 (quoting same).

---

[2] In *U.S. Bank National Association v. Verizon Communications, Inc.*, the Fifth Circuit mentioned the burdens for such motions when it noted: "The Trustee bore the burden of rebutting the motion to strike by raising all of the reasons entitling it to a jury trial." 761 F.3d 409, 426 n.13 (5th Cir. 2014), *as revised* (Sept. 2, 2014). But that statement appears to be dicta related to the appellate court's finding that the non-movant was pursuing arguments it failed to properly raise when briefing the motion to strike in district court. *Id.* This Court is reluctant to say much more, but *U.S. Bank* may suggest that once the movant establishes a basis for striking the jury, the non-movant must rebut it.

As MidFirst notes, the Zimmermans are co-trustees of the Zimmerman Family Trust and entered a loan agreement with MidFirst for $3.45 million related to commercial real estate. Compl. [1] at 2–3; *see also* 2006 Am. Note [15-1] at 1.  In addition, there is no dispute that Ian Zimmerman is a successful personal-injury attorney practicing in California who would presumably understand a jury-trial waiver.  Def.'s Mem. [16] at 4 (citing Ian Zimmerman's professional website); Pls.' Mem. [34] at 2 (acknowledging that Ian Zimmerman is an attorney). The Zimmermans' business acumen and negotiation skills are further reflected in their description of the refinancing negotiations with MidFirst and competing banks.  Compl. [1] at 3–5 (describing negotiations over the course of five months).  The Court assumes the truth of these averments, and the Zimmermans have offered no contrary evidence.  There is nothing to suggest "the kind of unequal power relationship necessarily leading to a finding of inequality of bargaining power."  *Westside-Marrero Jeep Eagle, Inc.*, 56 F. Supp. 2d at 709.

    2. Business or Professional Experience of the Party Opposing the Waiver

The same facts and allegations discussed above support a finding that the Zimmermans possessed significant business expertise; this factor also weighs in favor of enforcing the waiver. *See id.* at 708 (noting that parties subject to waiver were experienced businesspeople who had entered numerous contracts).  The Zimmermans have offered no evidence—or even argument—suggesting that they lacked business or professional experience.

    3. Opportunity to Negotiate

In support of this factor, MidFirst points to the Zimmermans' negotiations with respect to the 2014 refinance.  *See* Def.'s Mem. [16] at 4 (stating "the parties engaged in extensive negotiations over the course of their relationship") (citing Compl. [1] at 3–4 (describing the refinancing negotiations)).  Admittedly, this is not a great fit.  While the Zimmermans'

7

negotiation of the refinance may reflect their business skill, it does not necessarily speak to the opportunity to negotiate the 2006 Amended Note. But again, Plaintiffs have neither directly addressed this factor nor rebutted MidFirst's assertion. And, as courts have noted, "[t]he fact that [a party] did not attempt to negotiate the terms of the Agreement does not mean that its terms were not negotiable." *Branch Banking & Tr. Co.*, 2011 WL 5403403, at *2. The Court considers this factor neutral.

### 4. Was the Waiver Inconspicuous?

"An important factor is whether the waiver clause was set forth in bold and conspicuous lettering, or whether instead it was buried deep in the contract." *Westside-Marrero Jeep Eagle, Inc.*, 56 F. Supp. 2d at 708. Here, the jury waivers in the 2006 Amended Note and the associated limited guaranties are clear and conspicuous.

In the Amended Note, the waiver appears as a stand-alone paragraph titled "**WAIVER OF JURY TRIAL**," immediately prior to the signature lines. 2006 Am. Note [15-1] at 10 (waiver); *see id.* at 11 (signatures). Unlike most of the note, this paragraph utilizes larger font, all caps, and bold print. 2006 Am. Note [15-1] at 10–11. In the limited guaranties, again the waiver appears as a stand-alone paragraph titled "**WAIVER OF JURY TRIAL**" and utilizes large, all caps lettering with bold print. *See, e.g.*, Ian Zimmerman Guaranty [33-1] at 17. The waiver is contained in paragraph 17 (out of 19 total), so again, the waiver is adjacent to the signature line. *Id.* at 17 (waiver); *see id.* at 18 (signature). In other words, the waiver was not buried in lengthy documents using inconspicuous print when the Zimmermans agreed to it three separate times. This factor also weighs in favor of enforcing the waiver. *See, e.g.*, *Westside-Marrero Jeep Eagle, Inc.*, 56 F. Supp. 2d at 708 (noting relevant clauses were "just above the signature line").

8

5.  Representation by Counsel

Finally, in addition to the fact that Ian Zimmerman is himself an attorney, the waiver states that the Zimmermans consulted with counsel. 2006 Am. Note [15-1] at 10 ("**AFTER CONSULTATION WITH COUNSEL . . . THE UNDERSIGNED KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY[.]**"). The Zimmermans make no contrary claim.

In sum, four of the five factors indicate that the Zimmermans knowingly and voluntarily waived their right to a jury trial—just as the contracts state—when they signed the 2006 Amended Note and associated limited guaranties. The fourth factor is neutral, so the Court finds that they acted knowingly and voluntarily.

C.  Unilateral Waiver

Lastly, the Zimmermans say the waiver is unenforceable because it is unilateral—MidFirst did not waive its right to seek a jury trial. This is their best argument, but it still falls short.

The Zimmermans cite two cases to support their position, starting with *Hopple v. Prospect Mortgage, LLC*, No. EP-13-CV-137-DCG, 2013 WL 12321456 (W.D. Tex. Nov. 13, 2011). There, the court considered a suit by an employee against his employer for withholding payment of minimum wages and overtime compensation. *Id.* at *1. The defendant employer demanded a jury trial, and the plaintiff employee moved to strike the demand, saying the defendant contractually waived its right to a jury trial. *Id.* In fact, the plaintiff employee had signed a "Jury Waiver Agreement," stating that if *he* filed a lawsuit against the defendant employer, "a judge will decide if we acted correctly or incorrectly[.]" *Id.* The defendant argued that the waiver was unilateral and did not affect its right to demand a jury trial. *Id.* The court

9

agreed, holding that the jury waiver was "*enforceable*," but only as to the employee because it did not preclude the employer from seeking a jury. *Id.* at \*2 (emphasis added). So, as MidFirst points out, *Hopple* does not help the Zimmermans' argument that unilateral jury waivers are per se unenforceable.

Next, the Zimmermans cite *Zavala v. Aaron's, Inc.*, No. 4:15-CV-123, 2015 WL 5604766 (E.D. Tex. Sept. 23, 2015). Noemi Zavala worked as a sales manager for Aaron's, Inc., and upon hiring, she signed a policy manual acknowledgement containing a one-sided jury-trial waiver. *Id.* at \*1. The trial court refused to strike her jury demand based largely on the unilateral nature of the waiver. *Id.* at \*2–4. First, *Zavala* is not binding on this Court. Second, unilateral waivers are not per se unenforceable. *Zavala* and the cases it cites weigh the unilateral nature of the waiver with the other facts and factors. *Id.*; *see also RDO Fin. Servs. Co. v. Powell*, 191 F. Supp. 2d 811, 814 (N.D. Tex. 2002). Third, the factors weigh differently in the present case. There is simply a fundamental difference between the Zimmermans and Noemi Zavala, who signed an employee policy manual to gain employment as a sales manager for a national chain's local store. *See Zavala*, 2015 WL 5604766, at \*1. Perhaps the analysis in *Zavala* would have been different had she been an attorney signing documents as a co-trustee to secure a multi-million-dollar loan related to commercial real estate. Though relevant, the fact that the Zimmermans thrice signed unilateral waivers does not outweigh the other factors. The jury-trial waiver is enforceable.

III.   Conclusion

The Court has considered all arguments raised by the parties; those not addressed would not have changed the result. For the reasons stated, the Court finds Defendant's motion to strike Plaintiffs' jury demand [15] should be granted.

**SO ORDERED AND ADJUDGED** this the 4th day of December, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE